[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10114
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00044-RH-CAS

JANET A. GARRISON,

                                                        Plaintiff-Appellant,

versus

CITY OF TALLAHASSEE,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 9, 2016)

Before TJOFLAT, JILL PRYOR, and EDMONDSON, Circuit Judges.

PER CURIAM:

Janet Garrison appeals the district court's grant of summary judgment in favor of her former employer in her disability discrimination and retaliation suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112(a), 12203(a), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10(1)(A) and (7).  No reversible error has been shown; we affirm.

Garrison began working for the City of Tallahassee, Florida ("City"), as a full-time Purchasing Agent in 2003.  Garrison testified that part of her job included working directly with internal department representatives -- both in person and over the phone -- and interacting with outside vendors, some of whom would arrive unannounced to the office for assistance.  Garrison was also responsible for conducting vendor training sessions and for serving, at any one time, on "multiple" committees for the selection of vendors.

In 2006, Garrison was diagnosed with fibromyalgia.  As a result of her chronic condition, Garrison began missing significant amounts of work.  Between 2007 and 2013, Garrison requested -- and the City granted -- a number of reasonable accommodations.  For example, the City permitted Garrison to wear comfortable clothes and noise-cancelling headphones, relocated Garrison's office closer to a restroom, assigned Garrison a parking space close to the building, and

2

posted signs requesting that others refrain from spraying fragrances. The City also granted in part Garrison's requests to work a modified work schedule: allowing her to work one half day a week, and from 8:00 a.m. to 6:00 p.m. during the remainder of the week. Despite these accommodations, Garrison continued to miss significant amounts of work due mainly to sporadic, unplanned absences. On average, Garrison (who was scheduled to work 40 hours per week) worked only 30.5 hours per week.

In July 2013, Garrison submitted an updated request for reasonable accommodations. Among other things, Garrison requested again that the City allow her to telecommute during "flare-ups" of her condition and to work "as needed" after hours to make up time she missed due to her absences.

During meetings in July and September 2013, City representatives discussed Garrison's July 2013 request for reasonable accommodations, including her request to telecommute. Concerns were expressed about Garrison's poor attendance record despite her flexible work schedule and about Garrison's ability to interact with vendors if she was permitted to telecommute. The City concluded ultimately that full-time regular attendance was an essential function of Garrison's job. As a result, the City decided to deny Garrison's request to telecommute and, instead, to offer Garrison the option of a City-wide three-month job search as a reasonable accommodation.

In November 2013, Garrison filed a formal internal complaint against two of her supervisors. Garrison contended that her supervisors had discriminated against her based on her disability. Garrison also complained about the delay in receiving a response to her July 2013 request for reasonable accommodations.

On 13 December 2013, the City informed Garrison of its decision to deny her request to telecommute. The City explained that full-time regular attendance was an essential function of Garrison's position and that Garrison had been unable to satisfy this requirement, despite having already been granted a flexible work schedule. Because Garrison was unable to perform an essential function of her job -- regular full-time attendance -- the City notified Garrison that it was implementing its reasonable-accommodation policy. Under the policy, the City would search all vacant positions over a three-month period for a job whose essential functions Garrison could perform. On 24 February 2014 -- before the end of the City's three-month job search -- Garrison notified the City that she was taking an early retirement, effective immediately.

Garrison filed this civil action against the City, alleging that the City discriminated against her by not providing her with a reasonable accommodation. Garrison also alleged that the City retaliated against her for filing a complaint about disability discrimination.

4

The district court granted the City's motion for summary judgment. The district court concluded that Garrison failed to establish a prima facie case of disability discrimination because she had not demonstrated that she was a "qualified individual." In particular, the district court determined that Garrison could not perform an essential function of her job: full-time physical presence in the office. The district court also concluded that Garrison failed to establish a prima facie case of retaliation.

We review the grant of summary judgment de novo, viewing the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006).

## I.

The ADA prohibits employers from discriminating against a "qualified individual" on the basis of the individual's disability. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000) (citing 42 U.S.C. § 12112(a)). Because "disability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims," we consider Garrison's ADA and FCRA discrimination claims together. See Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007).

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability." Earl, 207 F.3d at 1365. That Garrison is disabled within the meaning of the ADA is undisputed.

About the second factor, a "qualified individual" is someone who can perform the essential functions of her job, with or without reasonable accommodation. 42 U.S.C. § 12111(8). The essential functions of a position "are the fundamental job duties of a position that an individual with a disability is actually required to perform." Holly, 492 F.3d at 1257. Whether a function is "essential" is determined on a case-by-case basis. Id. In determining whether a function is "essential," the district court must consider the employer's judgment about the essential functions of a position and any written descriptions the employer prepared before advertising or interviewing applicants for the position. 42 U.S.C. § 12111(8). "[A]lthough the employer's view is entitled to substantial weight in the calculus, this factor alone may not be conclusive." Holly, 492 F.3d at 1258 (quotations omitted). Other pertinent factors to consider include (1) the amount of time the employee spends performing the function; (2) the consequences of not requiring the employee to perform the function; (3) the work experience of past employees in the position; and (4) the current work experience of employees in similar jobs. 29 C.F.R. § 1630.2(n)(3).

6

An employer must provide a reasonable accommodation for an employee with a known disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the employer's business. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). A reasonable accommodation may include job-restructuring, permitting a part-time or modified work schedule, reassigning the employee to a vacant position, or acquiring or modifying equipment or devices. 29 C.F.R. § 1630.2(o)(2)(ii). "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." Lucas, 257 F.3d at 1255-56. The employee is not, however, necessarily entitled to the accommodation of her choice. See Earl, 207 F.3d at 1367.

The district court committed no error in concluding that Garrison was unable to perform an essential function of her job -- full-time physical attendance -- and, thus, was no "qualified individual." First, the City asserts that Garrison's physical presence in the office during regular business hours was an essential function of her position. And we owe the City's judgment "substantial weight." See Holly, 492 F.3d at 1258. Moreover, Garrison's own testimony establishes that her job required her to communicate regularly -- both in person and over the phone -- with internal department representatives and with external vendors, some of whom would arrive at the office without prior notice. Garrison also conducted vendor

training sessions and served on multiple vendor-selection committees, both of which required her to be present in the office. In the light of this evidence, the district court concluded correctly that Garrison's position was customer-service oriented and that being physically present in the office during regular business hours was an essential function of Garrison's job.

Contrary to Garrison's assertions on appeal, nothing evidences that other similarly-situated Purchasing Agents were permitted to telecommute or to work outside regular business hours. Nor has Garrison identified a single employee who was permitted to telecommute on the kind of regular, unscheduled, and long-term basis that Garrison had requested.

Garrison has identified no reasonable accommodation that would have allowed her to perform the essential functions of her job. Garrison has, thus, failed to establish that she was a "qualified individual" for purposes of stating a prima facie case of discrimination under the ADA or the FCRA.[1]

---

[1] Because Garrison has failed to satisfy her burden of identifying a reasonable accommodation, the City was "under no duty to engage in an 'interactive process' or to show undue hardship." See Earl, 207 F.3d at 1367.

II.

Both the ADA and the FCRA prohibit employers from retaliating against an employee for opposing an unlawful employment practice.  See 42 U.S.C. § 12203(a); Fla. Stat. § 760.10(7).  We assess retaliation claims under the ADA and FCRA using the same framework employed for Title VII retaliation claims.  Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278, 1287 (11th Cir. 1997) (ADA); Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) (FCRA).

To avoid summary judgment on a retaliation claim, a plaintiff must show (1) statutorily protected expression; (2) a materially adverse action; and (3) a causal link between the protected expression and the adverse action.  Stewart, 117 F.3d at 1287.  "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment."  Lucas, 257 F.3d at 1261.  The Supreme Court has said that a "materially adverse action" is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2415 (2006).

Garrison has failed to establish a prima facie case of retaliation.  Garrison engaged in statutorily protected speech when she filed her formal complaint in

November 2013.[2]  About the second element, Garrison has identified no "material adverse action" taken against her.  Because Garrison's requests to telecommute and to work outside regular business hours were no reasonable accommodations, the City's refusal to grant Garrison's requests constituted no material adverse action.  Cf. Lucas, 257 F.3d at 1261.  And Garrison's allegations that the City terminated her employment and denied Garrison alternative employment with the City are unsupported by the record: Garrison testified that she decided to retire before the end of the City's three-month job search.[3]  Garrison has also failed to demonstrate that she was qualified for the Procurement Manager position: a position that required full-time regular attendance in the office.

Garrison also contends that she was subjected to retaliatory harassment.  But the alleged harassment -- complaints from Garrison's supervisors about her frequent absences -- was not "sufficiently severe or pervasive to alter the terms and conditions of employment."  See Gowski v. Peake, 682 F.3d 1299, 1312 (11th Cir. 2012).  Moreover, nothing indicates that the alleged harassment "might have

[2] In the district court, Garrison asserted only that she was retaliated against in response to her November 2013 formal internal complaint.  Thus, to the extent Garrison now identifies other forms of protected speech in support of her retaliation claim, we will not consider those arguments on appeal.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

[3] In her appellate brief, Garrison makes passing reference to her contention that the City's conduct "forced" her to take an early retirement.  Because she makes no substantive argument for constructive discharge, however, that argument is abandoned.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

dissuaded a reasonable worker from making or supporting a charge of discrimination." See Burlington N. & Santa Fe Ry., 126 S. Ct. at 2415.

Even if we assume that Garrison could identify a materially adverse action (which she has not), Garrison has also failed to show a causal link between her protected activity and the alleged adverse acts. The record evidences that the complained-of conduct -- the alleged harassment, the City's failure to promote Garrison to a management position, the City's decision to deny Garrison's requests to telecommute, and the City's decision to implement a City-wide three-month job search -- occurred before Garrison filed her November 2013 formal complaint. Moreover, that the City denied Garrison's 2007 and 2012 requests to telecommute, on the basis that Garrison's position required full-time attendance in the office, further undercuts Garrison's argument that the City's refusal to grant Garrison's 2013 request to telecommute was causally related to Garrison's formal complaint.

Because Garrison has failed to demonstrate either a materially adverse action or a causal link, the district court granted properly summary judgment on Garrison's claims for retaliation under the ADA and the FCRA.

AFFIRMED.